UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                          Case No. 3:23-cr-88-MCR-HTC

DAVID FOUNTAIN,

_____/

ORDER OF DETENTION

On October 27, 2023, the Court held a hearing on the government's oral motion for detention pursuant to the Bail Reform Act of 1984, as amended, 18 U.S.C. § 3141, *et seq.* Based upon the information contained in the pretrial services report, the evidence presented at the hearing, and the arguments of counsel, the Court finds Defendant shall be detained pending trial because there are no conditions or combination of conditions which will reasonably assure the safety of the community.

I. **The Bail Reform Act**

The Bail Reform Act of 1984 provides a framework for determining whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. Although under the Act only a limited group of offenders should be denied bail pending trial, *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007), the Act also reflects "the deep public concern ... about the growing problem of crimes committed by persons on release and the recognition that there is a small but identifiable group of particularly

dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community," *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985) (quotations omitted). "Congress has determined that [w]hen there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *Id.* (quotations omitted) (alteration in original).

A court may release a defendant pending trial on appropriate conditions, *id.* § 3142(a)(2), or detain the defendant, *id.* § 3142(a)(4). *See Reno v. Koray*, 515 U.S. 50, 57 (1995). The court shall detain a defendant if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). A finding of risk of flight must be supported by a preponderance of the evidence, while a finding of danger must be supported by clear and convincing evidence. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

"Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423-25 (1979); *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (clear and convincing evidence is evidence which induces "an

abiding conviction that the truth of its factual contentions are 'highly probable'"). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *Chimurenga*, 760 F.2d at 405. Additionally, "danger to the community" does not refer to simply risk of physical violence; instead, it includes a danger that the defendant might engage in criminal activity that is a detriment to the community. *See United States v. Ingram*, 415 F. Supp. 3d 1072, 1077 (N.D. Fla. 2019) (collecting cases). Danger to the community, thus, includes "the harm to society caused by narcotic trafficking." *Id.*

Although the burden of proof generally falls on the government, when probable cause is established in certain cases, a rebuttable presumption of detention arises that no such conditions exist. *Id.* § 3142(e)(3). Those cases are identified in 3142(e)(3) and include an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* In a rebuttable presumption case, the defendant bears the burden of production – that is the burden of producing evidence to rebut the presumption. *See e.g., United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). While the burden is not a heavy one, even if it is met, the presumption nonetheless remains a factor for the court to consider. *See United States v. Stricklin*, 932 F.2d

3:23-cr-88-MCR-HTC

1354, 1355 (10th Cir. 1991). Also, even in a rebuttable presumption case the burden of persuasion remains with the government. *See id.* at 1354-55; *Mercedes*, 254 F. 3d at 436.

This is a rebuttable presumption case because Defendant is charged with four felony drug offenses, each of which carry a maximum term of imprisonment of 20 years. ECF Doc. 22. "The rebuttable presumption in 18 U.S.C. § 3142(e) exists to advance Congress' belief that those charged with serious drug crimes are necessarily a danger to the community and should be detained to protect the public, absent a showing by the defendant that he is not a danger to the community." *United States v. Kidd,* 2013 WL 142317, at *3 (N.D. Ga. Jan. 11, 2013).

To determine whether a defendant should be released on conditions or detained, courts consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Although § 3142(g) identifies the factors the courts should consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). Instead, the weight given to each factor will inevitably vary from case to case and might even vary depending

on whether the inquiry relates to a defendant's danger or to his risk of flight. *United States v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022).

## II.   ANALYSIS

### A. <u>Nature and Circumstances of the Offense Charged.</u>

When considering the nature and circumstances of the offense, the court considers "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, Defendant has been indicted by the grand jury for four drug offenses: conspiracy to distribute and possession with intent to distribute methamphetamine; possession with intent to distribute oxycodone; and two counts of distributing methamphetamine. ECF Doc. 22.

The possession, use, and distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population." *Treasury Employees v. Von Raab*, 489 U.S. 656, 668 (1989). Drug distribution causes "grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part). A "seller of addictive drugs may inflict greater bodily harm upon members of society than the person who commits a single assault." *Rummel v. Estelle*, 445 U.S. 263, 296 n.12 (1980) (Powell, J., dissenting). Therefore, "an indictment for a drug trafficking offense is strong evidence that the defendant is a

3:23-cr-88-MCR-HTC

risk to the community." *United States v. Allen*, 891 F. Supp. 594, 599 (S.D. Fla. 1995). Furthermore, studies "demonstrate a direct nexus between illegal drugs and crimes of violence." *Harmelin*, 501 U.S. at 1003, 111 (Kennedy, J., concurring).

Here, the Court finds the nature and circumstances of the offenses charged weigh in favor of detention.

    B. <u>Weight of the Evidence</u>.

This factor requires the district court to consider evidence proffered by the government which it intends to use at Defendant's trial. In considering the weight of the evidence, the court considers both the weight of the evidence of dangerousness and the government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006). "While it is true that the Court's determination of this factor 'neither requires nor permits a pretrial determination of guilt,' the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight." *United States v. Slatten,* 286 F. Supp. 3d 61, 67–68 (D.D.C. 2017) (internal citations omitted), *aff'd,* 712 F. App'x 15 (D.C. Cir. 2018); *United States v. Pirk,* 220 F. Supp. 3d 402, 410 (W.D.N.Y. 2016).

The weight of the evidence is a common-sense consideration. For instance, if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee

3:23-cr-88-MCR-HTC

to avoid future court proceedings and may indicate the defendant is a present danger to himself or the community if the government's allegations later prove to be true. Alternatively, if the only evidence against a defendant is circumstantial, contradicted, or unreliable, the defendant has less reason to duck court proceedings in the interest of proving his innocence and that evidence does not support viewing the defendant as a risk to the safety of the community. As such, the weight of the evidence against Defendant will be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate. *United States v. Blackson*, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023).

At the detention hearing, the government proffered the following evidence:

- Law enforcement conducted a search of Defendant's residence on May 25, 2022. At that time, Defendant attempted to flee and in doing so threw an orange box, which was recovered by law enforcement. In the box, law enforcement found over $100,000 in cash. Law enforcement also seized a Dodge Hellcat. Defendant agreed to speak to law enforcement after being read his Miranda rights and indicated he purchases kilograms of methamphetamine and sells ounces. *See* Gov't. Exh. 1.

- The government intercepted calls between Defendant and co-conspirators discussing the distribution of controlled substances. *See* Gov't. Exh. 1.

The Court finds the weight of the evidence to be substantial.

C. <u>The History and Characteristics of the Defendant</u>.

In considering the history and characteristics of a defendant, the court considers such matters as the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g).

Defendant is 25 years old and has lived in Pensacola, Florida his entire life. Currently, he lives with his mother, girlfriend, niece and sister. Additionally, a brother lives in a shed on the property. Defendant dropped out of school at the age of 12. Despite being able-bodied, Defendant is not employed and reports no income since 2021, when his business, "Big Man Logistics" ceased operating. Instead, he reports performing chores, such as cutting grass, for family members for money. He is otherwise supported by his mother.

Despite this lack of income, the government proffered that when Defendant was arrested on the indictment on October 25, 2023, he was driving a new Dodge Hellcat (a second Hellcat to the one seized in May 2022).

Additionally, after the May 25, 2022 search and seizure, the government proffered that Defendant continued to engage in drug activity. Specifically, according to DEA Form 6, on March 8, 2023, the DEA conducted a controlled

3:23-cr-88-MCR-HTC

purchase of approximately 5 ounces of suspected methamphetamine. *See* Gov't. Exh. 3. On March 16, 2023, the DEA conducted a second controlled purchase of 6 ounces of suspected methamphetamine from Defendant. *See* Gov't Exh. 4. Also, at the time of his arrest, officers found a gun and scales. The government also proffered that more recently Defendant contacted a confidential source to ask if that person had a source of methamphetamine.

It also appears Defendant has a substance abuse problem. When he was interviewed by Probation after the arrest, Defendant admitted he would be positive for opiates, which he uses for back pain. In fact, Defendant reported using opiates regularly approximately one year ago. There is no indication Defendant has a prescription for the opiates and the Court notes one of the charges in the indictment is for selling oxycodone. *See also,* Gov't. Exh. 1a (Transcript of a telephone call between Fountain and a co-conspirator regarding the distribution of Percocet).

Defendant's criminal history, however, is relatively minimal. He was arrested and pled guilty to disorderly conduct when he was 17 and was placed on probation. Defendant ended up violating the probation, but adjudication of that violation was withheld and probation continued. At 19, Defendant pled no contest to reckless driving and driving without a license, first offense.

Despite Defendant's minimal criminal history, the Court finds Defendant's history and characteristics weigh in favor of detention. *United States v. Rivera*, 90

F. Supp. 2d 1338, 1343 (S.D. Fla. 2000), *aff'd,* 273 F.3d 397 (11th Cir. 2001) ("The lack of a prior criminal record, standing alone, is simply not sufficient to rebut the statutory presumption."). The Court notes Defendant is only 25 years old, and according to the indictment, is a member of a conspiracy that commenced in 2021. Given his age and when the conspiracy is alleged to have commenced, Defendant's "'clean' criminal record loses persuasive value." *United States v. Arredondo,* 1996 WL 521396, at *4 (M.D. Fla. Sept. 11, 1996). Moreover, as stated above, the government has proffered evidence showing Defendant continued to traffic drugs after law enforcement's initial search and seizure at his residence in May 2022. Additionally, Defendant has not been employed in more than 2 years and yet was found with over $100,000 in cash and has funds to be able to afford vehicles with a retail price of at least $70,000. The lack of an explanation for Defendant's expenditures suggests they come from an illegal source.

Also, while Defendant argues he has no history of violent crimes, it cannot be disputed drug dealing is "a violence-prone business." *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *see United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting "the illegal drug industry is, to put it mildly, a dangerous, violent business"). Undoubtedly "society is endangered when courts release those individuals into the community whose past

conduct indicates that they are likely to possess, control or distribute controlled substances." *United States v. Anderson*, 670 F.2d 328, 330-31 (D.C. Cir. 1982). "[D]rug offenders pose a special risk of flight and dangerousness to society." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). Moreover, as stated above, officers found a gun in Defendant's residence at the time of his arrest. *See United States v. Harris,* 128 F.3d 850, 852 (4th Cir.1997) (noting that "[t]he Sentencing Commission [has] recognized that guns and drugs form a lethal combination that can lead to violence."); *United States v. Roberts,* 2022 WL 11455294, at *4 (M.D. Ala. Oct. 19, 2022) ("The fact that Roberts has not been charged with any crimes of violence or possession of firearms does not mitigate the danger Roberts presents by his pattern of continued involvement in drug trafficking, which constitutes a danger to others and the community.").

Defendant did not offer any evidence to counter the government's showing that Defendant continues to possess the means and the ability to traffic in controlled substances. Instead, Defendant proffered only three letters in support of his release. The letters were from a family friend, who writes that Defendant was a great inspiration to her son when he was growing up and going through hard times and a distant cousin who talks about Defendant's relationship with her son. Defendant's Exh. 1, 3. There is also a one paragraph letter from the mom of Defendant's godson, who describes Defendant as "more helpful than harmful to the community."

3:23-cr-88-MCR-HTC

Defendant's Exh. 2.  It is unclear whether these friends are aware of the charges against Defendant.  Regardless, whether Defendant is "loving" to his family and friends has no bearing on whether he may also be trafficking drugs.  "The Defendant's participation in the drug trade demonstrates Defendant's disregard for the well-being of the community since the purchase and sale of addictive and dangerous controlled substances is inherently harmful to society." *United States v. Marquez*, 2011 WL 232421, at *3 (S.D. Fla. Jan. 24, 2011).

The Court finds the government has presented clear and convincing evidence Defendant is a danger to the community.

### D. The Nature and Seriousness of the Danger Posted by Release.

The Court finds there is a serious danger that, if released, Defendant will return to drug trafficking to support himself.  *See United States v.* Martin, 2017 WL 4080689, at *3 (S.D. Ga. Sept. 14, 2017) ("Congress has recognized that those in the drug 'business'—entrepreneurs like this defendant—'pose a significant risk of pretrial recidivism.'").  Indeed, the government has proffered evidence showing Defendant did so after the May search and seizure, including proffering that Defendant told law enforcement they would rather have him on the street, rather than detained so they could get more evidence.  It is reasonable, therefore, to assume, that Defendant would continue to traffic in drugs if released.  *See United States v. Knight*, 636 F.Supp.1462, 1467 (S.D. Fla. 1986) ("In light of the fact that Knight continued

to play an integral role in the sale of narcotics even after the arrest of Joseph, it is reasonable to assume that Knight would continue do so if released."). The risk a defendant will continue to engage in drug trafficking constitutes a danger to the safety of the community. *King*, 849 F.2d at 487, n.2.

In determining whether detention is necessary, a court "makes a judgment about the persuasiveness of the evidence offered by each party[.]" *United States v. Clum*, 492 F. App'x 81, 85 (11th Cir. 2012) (citation omitted). While Defendant argues there are conditions which can be imposed, such as GPS monitoring or home detention, "there is virtually nothing that any person could do to prevent Defendant from engaging in drug trafficking if that is what []he set [his] mind to doing. It is not only possible for Defendant to continue to engage in the continued sale of narcotics from [his] home, it also is very probable." *United States v. Carter*, 2015 WL 541554, at *4 (M.D. Ga. Feb. 10, 2015); *see also United States v. Williams*, 2016 WL 2770883, at *3 (S.D. Ala. May 13, 2016) ("While defense counsel argued that electronic monitoring would adequately address the danger issue, the undersigned finds that such would not prevent Defendant's involvement with criminal activity if he were so inclined."). Here, based on the evidence proffered by the government, the Court finds Defendant has not overcome the presumption that no condition or combination of conditions will reasonably assure Defendant will not pose a danger to the community.

3:23-cr-88-MCR-HTC

Accordingly, the Court **ORDERS** that Defendant be held in the custody of the Attorney General or his designated representative pending trial in this matter. The Attorney General or his designated representative shall, to the extent practicable, confine Defendant separate from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity to consult with counsel in private while in custody. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED this 30th day of October, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**